[Cite as *State v. Faber*, 2015-Ohio-3720.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY


STATE OF OHIO,

     PLAINTIFF-APPELLEE,            CASE NO.  13-15-01

     v.

ERIC A. FABER,                      **O P I N I O N**

     DEFENDANT-APPELLANT.


Appeal from Tiffin Municipal Court
Trial Court No. 14-CRB-712A

Judgment Affirmed

Date of Decision:  September 14, 2015


APPEARANCES:

    *Gene P. Murray*  for Appellant

    *Richard H. Palau* for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Eric Faber, appeals the judgment of the Tiffin-Fostoria Municipal Court convicting him of obstructing official business and possession of marihuana and sentencing him to 90 days in jail. On appeal, Faber argues that the trial court erred by entering a verdict that was against the manifest weight of the evidence. Faber also argues that the trial court lacked jurisdiction over his charges and thus its judgments are null and void. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On June 16, 2014, a complaint was filed in the Tiffin-Fostoria Municipal Court, charging Faber with one count of obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree; and one count of possession of marihuana in violation of R.C. 2925.11(A), a minor misdemeanor.

{¶3} This matter proceeded to trial on January 7, 2015, where the following relevant evidence was adduced.

{¶4} Deputy Troy Gibson of the Seneca County Sheriff's Office was the first witness to testify for the State. Deputy Gibson testified that he was working for the Seneca County Sheriff's Office on June 14, 2014. That day, he came into contact with Faber sometime around 7:00 or 8:00 p.m. Deputy Gibson was parked near an intersection where County Road 15, County Road 34, and County Road 51

intersect. As he was watching traffic, Deputy Gibson testified that he saw a blue station wagon enter the intersection and turn northbound. He also testified that he recognized the driver of the vehicle as Faber and believed that Faber had an active warrant.

{¶5} Deputy Gibson testified that he radioed dispatch to confirm the warrant on Faber. While waiting on dispatch, Deputy Gibson followed the blue station wagon and ran the registration through dispatch. Deputy Gibson then testified:

> At that time, the vehicle turned left into a [sic] Township Road 113. I'm familiar with this area. I patrol this area all the time. I knew that the road led to a dead end at the farm. So I turned on that road, he was already turning around in a farmer's lane and coming back toward my location.
>
> As I'm sitting there at the end of township road, he pulls up to a stop sign. * * * He then turned southbound on 51 back the opposite direction he came from.
>
> At this time, I back out of there and I continue to follow him again, still waiting for our dispatch to confirm the active warrant. I continued to follow him. At this time, he's a little further ahead of me because it took me a little bit of time to turn around and then proceed southbound to follow him.
>
> During this, around this time, he had turned into a resident's driveway. As he's turning into this resident's driveway, dispatch confirmed that he did have an active warrant out of Wood County * * *.
>
> At this time, I sped up to try to catch up with him and get a little bit closer to him. At this time, the vehicle he was driving, the blue station wagon, proceeded to go up the driveway and park at the garage at this location.
>
> As I'm making the turn to pull into this driveway, I see [Faber] jump out of the driver's seat and take off to the northeast side of this residence.

Trial Tr. p. 77-76.

{¶6} After he saw Faber jump out of the car, Deputy Gibson testified that the passenger in the car moved over to the driver's seat. Deputy Gibson later identified the passenger as Faber's father. Deputy Gibson also testified that the driveway was in Pleasant Township in Seneca County. *Id.* at 77.

{¶7} Deputy Gibson waited for backup and a K-9 unit to arrive before he began his search for Faber. After his backup arrived, Deputy Gibson testified that he waited at the vehicle while Deputy Nowak and Officer Demonte searched for Faber. Deputy Gibson stated that while Faber was running, he crossed county lines running from Seneca County into Sandusky County. After Faber was Mirandized, officers searched his person and found "a bag of green leafy vegetation" in his front right pocket. *Id.* at 83.

{¶8} On cross-examination, Deputy Gibson testified that he did not turn on his flashers or siren. He also did not use his cruiser's PA system and ask Faber to pull over his vehicle. He also testified that he did not shout any commands at Faber when he saw him exit the vehicle. Deputy Gibson testified that he did not turn on his flashers until after he made contact with Faber's father and that was so the other officers would see him when responding.

{¶9} Deputy Gibson then had the following relevant exchange:

-4-

> Q: Did Eric Faber do anything to the point that he went around that garage that caused you to not be looking for Eric Faber?
>
> A: Me personally, no.
>
> Q: Okay. At that point, you were just performing the function of looking for him, which is what you were doing before he left the vehicle, correct?
>
> A: Correct.

*Id.* at 98.

{¶10} Officer Nowak of the Tiffin Police Department then testified. Officer Nowak testified that he was a deputy at the Seneca County Sheriff's Office on June 14, 2015, and was working that day. While on patrol, Officer Nowak heard Deputy Gibson on the radio traffic asking to check for a warrant on Faber. Officer Nowak testified that he knew Faber had an active warrant and "immediately started Deputy Gibson's way." *Id.* at 108.

{¶11} Once Officer Nowak got to Deputy Gibson's location, Deputy Gibson advised Officer Nowak that Faber had run to the north end of the residence. Both Officer Nowak and Deputy Gibson then waited for Officer Demonte to arrive at the scene. Once Officer Demonte arrived, Officer Nowak conferred with him and they came to the conclusion that Faber must have been in the barn. Officer Nowak testified that in the barn were livestock, straw bales, and a large hay mound. There was also a loft above the barn. While Officer Nowak was looking under the bales, Officer Demonte climbed the ladder to the loft and

"immediately started yelling, 'Stop, let me see your hands, show me your hands.' " *Id.* at p. 111.

**{¶12}** Faber complied with Officer Demonte's orders and came out with his hands raised above his head. Faber was then ordered down out of the hay loft, and he complied again and was taken into custody. Officer Nowak testified that while they were speaking with Faber he made the comment, " 'You guys are good. You got me.' " *Id.* Officer Nowak then stated that he searched Faber after taking him back to his cruiser. He found "green leafy vegetation" in Faber's pocket that Faber admitted was marihuana. *Id.* at 112.

**{¶13}** On cross-examination, Officer Nowak testified that the farm where he parked his vehicle was in Sandusky County. He also testified that Faber was hiding in a barn in Sandusky County. In fact, Officer Nowak testified that he had no knowledge of what Faber did prior to being detained in Sandusky County. Officer Nowak then testified that Faber was hindering his investigation by hiding in the loft of the barn.

**{¶14}** Officer Jacob Demonte of the Tiffin Police Department then testified. Officer Demonte was working on June 14, 2014, and received a call from the Seneca County Sheriff's Office to assist them in locating a suspect. Officer Demonte arrived and together with Officer Nowak, they searched the barn which was north of the house. Officer Demonte testified that after he entered the

barn he noticed a hay loft. He climbed the ladder to the loft and noticed someone in the loft. At that point, he "drew [his] firearm and told [Faber] * * * to come out immediately." *Id.* at 133. According to Officer Demonte, Faber complied and came out with his hands up.

{¶15} On cross-examination, Officer Demonte admitted that all of Faber's conduct that he observed occurred in Sandusky County. Further, Officer Demonte admitted that nothing Faber did in Sandusky County hindered or obstructed his ability to detain him. *Id.* at 140.

{¶16} The State's final witness was Detective Donald Joseph of the Seneca County Sheriff's Office. Detective Joseph was qualified as an expert witness and testified that he performed two tests on the plant-like material found in Faber's pocket and that both tests confirmed that the substance was marihuana. Detective Joseph testified that there were 1.15 grams of marihuana.

{¶17} After the State rested, Faber moved for acquittal under Crim.R. 29, but the trial court denied the motion. Faber then rested and both the State and Faber offered their closing statements before the trial court charged the jury prior to deliberations.

{¶18} On January 7, 2015, the jury returned a guilty verdict on the obstruction charge, and the trial court found Faber guilty of possession of marihuana. This matter then proceeded to sentencing on that same day. The trial

court imposed a 90 day sentence with 30 days suspended on the obstruction charge and imposed a $100 fine on the possession charge.

{¶19} Faber filed this timely appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

**BASED ON THE EVIDENCE, OR LACK THEREOF, THE TRIER OF FACTS, TO WIT, THE JURY, ERRONEOUSLY REACHED A GUILTY VERDICT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WITH SPECIFIC REGARD TO THE CHARGED OFFENSE OF OBSTRUCTING OFFICIAL BUSINESS.**

### Assignment of Error No. II

**THE TRIAL COURT LACKED JURISDICTION OVER THE CHARGED OFFENSES OF OBSTRUCTING OFFICIAL BUSINESS AND POSSESSION OF MARIHUANA, THEREBY RENDERING THE TRIER OF FACTS' JUDGMENTS ON BOTH CHARGES, OBSTURCTION OFFICIAL BUSINESS AND POSSESSION OF MARIHUANA, AS BEING NULL AND VOID <u>AB INITIO.</u>**

{¶20} Due to the nature of the assignments of error, we elect to address them out of order.

### Assignment of Error No. II

{¶21} In his second assignment of error, Faber argues that the trial court did not have subject matter jurisdiction over his case and therefore the judgment against him is void. We disagree.

**{¶22}** " 'Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits' and 'defines the competency of a court to render a valid judgment in a particular action.' " *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 6, quoting *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). "Unlike courts of common pleas, which are created by the Ohio Constitution and have statewide subject-matter jurisdiction, municipal courts are statutorily created, and their subject-matter jurisdiction is set by statute." (Citations omitted.) *Cheap Escape* at ¶ 7. R.C. 1901.20 provides that municipal courts have subject-matter jurisdiction in criminal matters "only when the crime was committed 'within its territory' or within the limits of its territory.' " *Id.* at ¶ 18, quoting R.C. 1901.20(A)(1) and (B).

**{¶23}** "Beginning January 1, 2014, the Tiffin-Fostoria municipal court has jurisdiction within Adams, Big Spring, Bloom, Clinton, Eden, Hopewell, Jackson, Liberty, Loudon, Pleasant, Reed, Scipio, Seneca, Thompson, and Venice townships in Seneca county * * *." R.C. 1901.02(B). In this matter, both complaints allege that Faber's criminal activity occurred in Pleasant Township in Seneca County. *See* (14CRB712A Docket No. 1) and (14CRB712B Docket No. 1). Thus, the trial court had jurisdiction to hear the case and determine whether

Faber obstructed official business and possessed marihuana while in Seneca County.[1]

{¶24} Accordingly, Faber's second assignment of error is overruled.

*Assignment of Error No. I*

{¶25} In his first assignment of error, Faber argues that the trial court erred when it entered a guilty verdict that was against the manifest weight of the evidence. We disagree.

{¶26} Although Faber was convicted of two charges, obstructing official business and possession of marihuana, Faber has limited his appeal to the issue of whether the conviction for obstructing official business was against the manifest weight of the evidence. Therefore, we will not consider whether his conviction for possession of marihuana was against the manifest weight of the evidence.

{¶27} When an appellate court analyzes a conviction under the manifest weight standard, it "sits as the thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, it must review the

---

[1] We note that the alleged conduct started to occur in Seneca County, but ended in Sandusky County. Specifically, the following exchange occurred at trial:

> [Deputy Gibson]: * * * [Faber] jumped out of the vehicle and took off running.
> Q:      Is this still in Pleasant Township, Seneca County?
> A:      It was.

Trial Tr. p. 77. Thus, the trial court did not lose jurisdiction since it was alleged that the criminal conduct occurred in Seneca County.

entire record, weigh all of the evidence and its reasonable inferences, consider the credibility of the witnesses, and determine whether the fact finder "clearly lost its way" in resolving evidentiary conflicts and "created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). When applying the manifest weight standard, a reviewing court should only reverse a trial court's judgment "in exceptional case[s]" when the evidence "weighs heavily against the conviction." *Id.* at paragraph three of the syllabus.

{¶28} Faber was convicted of one count of obstructing official business, in violation of R.C. 2921.31(A), which states:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶29} On appeal, Faber argues that Deputy Gibson never gave him an "audible or visible directive" to stop running. *See* (Appellant's Br., p. 8). Therefore, he could not have acted purposefully to hamper or impede the officer in the performance of his duties.

{¶30} However, there is nothing in R.C. 2921.31 that requires that the officer give a command—either audibly or visibly. R.C. 2921.31 has five essential elements: (1) an act by the defendant; (2) done with the purpose to

prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege. *State v. Dice*, 3d Dist. Marion No. 9-04-41, 2005-Ohio-2505, ¶ 19.

**{¶31}** In general, the offense of obstructing official business requires the doing of some affirmative act by the defendant. *State v. King*, 3d Dist. Marion No. 9-06-18, 2007-Ohio-335, ¶ 58. Accordingly, a person cannot be guilty of obstructing official business by doing nothing or failing to act. *City of Hamilton v. Hamm*, 33 Ohio App.3d 175 (12th Dist.1986); *City of Columbus v. Michel*, 55 Ohio App.2d 46 (10th Dist.1978). While courts have held that the mere refusal to answer questions does not constitute an "act," this court has held that running from the police can "hinder the officers' performance of their lawful duty * * *." *Dice* at ¶ 23. *See also State v. Harris*, 10th Dist. Franklin No. 05AP-27, 2005-Ohio-4553, ¶ 16 ("[W]e hold that fleeing from a police officer who is lawfully attempting to detain the suspect under the authority of *Terry*, is an affirmative act that hinders or impedes the officer in the performance of the officer's duties as a public official * * *."); *State v. Lohaus*, 1st Dist. Hamilton No. C-020444, 2003-Ohio-777, ¶ 12 ("[W]e hold that Lohaus's actions in fleeing across several lawns after being told to stop—and in forcing the investigating office to physically restrain him—fell squarely within [R.C. 2921.31's] proscriptions."); *State v.*

*Davis*, 140 Ohio App.3d 751, 753 (1st Dist.2000) ("[T]he evidence shows that Davis became aware that the officers were trying to detain him and continued to walk away from them. His refusal to stop gave the officers probable cause to believe that he was impeding the performance of their duty in violation of R.C. 2921.31.").

{¶32} Faber tries to distinguish this court's previous decision in *Dice* from the present facts. In *Dice*, the defendant attempted to flee from police who sought to talk to him about an ongoing investigation. *Dice*, 2005-Ohio-2505 at ¶ 8-11. At trial, the defendant testified that he saw his girlfriend, who he had allegedly threatened, with police officers. *Id.* at ¶ 8. The officers testified that they called out to the defendant, telling him to stop, but he continued to walk away. *Id.* The defendant testified that he knew officers were behind him and heard them tell him to stop, but he ran away anyway because he was scared. *Id.* at ¶ 8-9. Officers pursued the defendant on foot for several minutes, and the defendant scaled a chain link fence, which resulted in injuries to the two officers who were chasing the defendant. *Id.* at ¶ 10.

{¶33} This court found that from the facts presented it was evident that the defendant "acted with the specific intent to prevent, obstruct or delay the officers from what was obviously an ongoing investigation, part of their official duties." *Id.* at ¶ 22. While Deputy Gibson admitted at trial that he did not turn on his lights

or sirens, nor did he shout to Faber to stop running, there was other evidence presented that Faber was acting with a specific intent to prevent, obstruct or delay the officers from their ongoing investigation. First, Deputy Gibson testified that Faber was acting suspiciously by driving onto dead-end streets and turning around. Further, Deputy Gibson testified that Faber "jumped" out of his car and fled behind a residential house out of sight. He then noticed that the passenger in Faber's car scooted into the driver's seat of the car. Lastly, when officers finally found Faber, Faber told the officers that "you guys are good, you got me." Trial Tr. p. 135. Officer Demonte testified that Faber said he was "just running" and he interpreted this to mean that he was running from the police. *Id.* at 135-136.

{¶34} From Faber's own admissions, it was reasonable for the jury to believe he acted with the specific intent to prevent, obstruct or delay Deputy Gibson's investigation.

{¶35} The State also presented evidence that Faber's conduct actually hampered Deputy Gibson's investigation. Deputy Gibson had to call for back up, waited 20 minutes for other officers to arrive, and used additional resources to locate Faber. Deputy Gibson had to call in to the Sandusky County Sheriff's Office and the Ohio State Highway Patrol for assistance. Lastly, the State presented evidence that Faber acted without privilege. There was some testimony

-14-

that Faber did not live on the property where he parked his car, or at the barn where he was hiding. *See id.* at p. 85-86, 117, 121.

{¶36} Although this court's research revealed no cases where a person was convicted of obstructing official business *without first being signaled or ordered by a law enforcement official to perform an action*, we decline to read into the statute an element that is not present. Therefore, the jury was free to conclude, based on all the evidence submitted, that Faber acted purposely and was guilty of obstructing official business when he drove onto another person's property and proceeded to flee on foot.

{¶37} For the aforementioned reasons, we cannot say that the jury clearly lost its way in resolving the evidentiary conflicts in this case.

{¶38} Accordingly, Faber's first assignment of error is overruled.

{¶39} Having found no error prejudicial to Faber in the assignments assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**