[Cite as *State v. Gaspareno*, 2016-Ohio-990.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                CASE NO. 9-15-15

     v.

CRISTINO GASPARENO,              O P I N I O N

     DEFENDANT-APPELLANT.


Appeal from Marion County Common Pleas Court
Trial Court No. 14-CR-535

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: March 14, 2016


APPEARANCES:

    *Brian G. Jones* for Appellant

    *Denise M. Martin* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Cristino Gaspareno, appeals the judgment of the Court of Common Pleas of Marion County convicting him of one count of trafficking in heroin and sentencing him to 12 months in prison. On appeal, Gaspareno argues that the trial court erred by (1) considering statements made by Gaspareno's co-defendants, Sandra Luiz Vera Sanchez and Manuel Guerra, contained in their sealed presentence investigations ("PSI") for the purposes of sentencing Gaspareno; (2) failing to inform Gaspareno that the trial court was not bound by any sentencing agreement between the State and Gaspareno; (3) imposing a mandatory three-year period of post-release control; and (4) failing to properly qualify the court interpreter, Pedro Coe. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

{¶2} On November 25, 2014, a felony complaint was filed in the Marion Municipal Court against Gaspareno[1], charging him with one count of complicity to trafficking in heroin with a specification in violation of R.C. 2923.03, 2925.03(A)(1), and 2925.03(C)(6), a felony of the first degree. The Marion County Grand Jury returned a two count joint indictment against Guerra, Gaspareno, and Sanchez on December 3, 2014.[2] Gaspareno was charged with the

---

[1] The original complaint and the later indictment charged "Cristinoher Gaspareno." At a later date, the State was permitted to amend the complaint and indictment to correct the spelling error to Cristino.
[2] The first count charged Guerra solely, thus we will not discuss it.

same exact crime. Additionally, two separate forfeiture specifications were filed. The forfeiture specifications sought the forfeiture of a 2002 Buick Rendezvous and $4,675 in cash. As a result of the indictment, the State moved to transfer the case to the Court of Common Pleas of Marion County, which was granted on December 4, 2014. Gaspareno entered a plea of not guilty.

{¶3} The State filed a bill of particulars on December 29, 2014, where it alleged that Gaspareno and his co-defendants met up with two confidential informants and sold the informants 26.3 grams of black tar heroin in exchange for $1,600.

{¶4} The court held a pretrial on December 29, 2014. Present in the courtroom were the judge, prosecutor, all three co-defendants with separate defense counsel[3], and Coe. At the onset, Coe indicated that he would be performing interpreter services for all three co-defendants during the pretrial. After introducing all three cases on the record, the trial court stated, "Also present with the Defendants is certified interpreter Pedro Coe who has performed - - providing interpretation services for the Defendants today." Dec. 29, 2014 Hrg., p. 2. Coe was then sworn in by the court.

{¶5} After introducing Coe, the trial court addressed all three co-defendants and explained that Coe would be providing interpreter services throughout all the

---

[3] Brian Jones representing Gaspareno; David Lowther representing Guerra; and Jon Doyle representing Sanchez.

court proceedings. The trial court asked each co-defendant if he or she understood. Coe stated that Sanchez "nods her head in affirmative." *Id.* at p. 3. Mr. Guerra stated, "Um-hum." *Id.* The record is silent as to whether Gaspareno gave any audible or visual indication as to his understanding of Coe's role.

{¶6} Throughout the hearing, the court discussed procedural issues such as discovery and whether the cases would be tried together. While the court and all counsel were discussing a letter allegedly written by Guerra to Sanchez, the following exchange occurred.

Lowther: From what I've received I've not seen anything that would I guess - - okay - -

Coe: They stated that that - -

Lowther: No. No. No.

Doyle: I don't want them saying anything. I don't want my client saying anything. Unless you run it by me.

Court: Right. Right. If there's something they want to communicate to their attorney we can allow ya [sic] to communicate that to their attorney. I don't want you to communicate it out in open Court.

Coe: Okay. No problem.

* * *

Court: Just so we're clear, you know, I assume you're still interpreting here. I kind of - -

Coe: I stopped, you know, after what you said you know, "Hold on". Do you guys want me to keep saying - -

Court: No, I want you to - - I want you to con - -

Coe: Okay. Usually what I do I tell them everything that is said as if they would be, you know, their native language and they would know what is going on in the room.

Court: No, right. You should be - - everything that is said here in the courtroom you should be commun - -

Coe: I'm just saying - - okay. Okay. I just stopped for a couple minutes because you said that - -

Court: But - - but if they wanna say something I don't want you saying out in Court what the Defendants have to say.

Coe: No problem. Okay. Okay. Okay, Your Honor.

Court: Now, the – the other issue that - - the other issue and I think Mr. Jones raises it here. As an interpreter all you're doing is repeating what is said. You know you're not sharing any information that any individuals have said, you know, with anyone. You know, it would be inappropriate for you to share with anyone other than an individual Defendant's counsel anything that Defendant has told you or any conversation that's taken place between an attorney and the client. It'd also be inappropriate to share anything you overheard from any of the attorneys. Do you have any issue with any of that, Mr. Coe?

Coe: No, Your Honor, may I say I usually - - best way for me to say I had almost like a priest and a confessionary. I can the saint or I can tell - - (inaudible) - - but I can't tell both. So I cannot tell any of them something I heard from the other person.

Court:     Okay.  And you can't tell the Prosecutor either.

Coe:      No.  No.  Nobody.  I mean, it dies with me.

*Id.* at p. 15, 17-18.

**{¶7}** Additional objections were raised by different counsel regarding Coe's ability to remain objective.  In vouching for Coe, the court noted that Coe had served as an interpreter for approximately the last ten years or so without any problems.  Coe responded that he would perform his job objectively.  The court and counsel concluded the hearing by discussing other details of the case, including potential trial dates that worked for everyone.  During this discussion, the following exchange occurred.

Court:     If we have multiple Defendants, we will have a separate interpreter for each Defendant during trial.

Lowther:  For each, okay.

Court:     For pretrial I didn't think that was necessary.  You know, for the Suppression hearing, I'll need at least two interpreters because if we have any Defendant testifying we're gonna need a separate interpreter for that testifying Defendant.  So we'll have to arrange for two interpreters at least for the Suppression Hearing.

Lowther:  And that could come into play at trial as well.

Court:     The trial, we'll need three.  We'll need one for every Defendant.

*Id.* at p. 32.

{¶8} The court held another pretrial on January 27, 2015. Present in the courtroom were the judge, prosecutor, all three co-defendants with separate counsel, and Coe, serving as the interpreter. The trial court reminded Coe that he was still under oath, and Coe acknowledged the same. At the onset, the court asked Coe, "Are you still interpreting for them?", and Coe replied, "Yeah." Jan. 27, 2015 Hrg., p. 2.

{¶9} At this hearing, the court tried to clear up some issues with the case. The court, prosecutor, and counsel for the co-defendants engaged in a lengthy discussion regarding a translation of the letter written by Guerra to Sanchez. The prosecutor and Jones conceded that the letter was not of any significance to Gaspareno, although Jones stated that he might be able to use the letter to Gaspareno's advantage.

{¶10} The only significant part of the pretrial that concerned Gaspareno was that Jones raised an issue regarding bench notes from a Bureau of Criminal Investigations lab technician. The court ordered that the State provide those notes to Jones. The pretrial concluded after a new trial date was chosen.

{¶11} Negotiations continued between Gaspareno and the State, and, ultimately, Gaspareno agreed to plead guilty to a lesser charge of trafficking in heroin in violation of R.C. 2925.03(A)(1) & (C)(6), a felony of the fifth degree.[4]

{¶12} A change of plea hearing was held on February 10, 2015. Present in the courtroom were the judge, prosecutor, Gaspareno and his counsel, and Coe serving as the interpreter. At the beginning of the hearing, the trial court stated, "Mr. Coe is [sic] previously been qualified and appointed as an interpreter in this case." Feb. 10, 2015 Hrg., p. 1. Coe was then sworn in by the court. When asked if he had any questions regarding Coe's service, Gaspareno replied that he did not.

{¶13} Next, the State indicated that Gaspareno would be pleading guilty to an amended charge of trafficking in heroin. Specifically, references to the weight and the crime being committed within the vicinity of a juvenile would be removed. The State recommended that Gaspareno be placed on community control for a two year period.

{¶14} The court proceeded to engage in a colloquy with Gaspareno. The record notes that, "**Thereupon, all questions directed to [Gaspareno] by the Court were translated to [Gaspareno] by Mr. Coe, answered by [Gaspareno,] and relayed back to the Court through the Interpreter, Mr. Coe.**" (Emphasis

---

[4] We note that the Entry of Guilty Plea form has the case caption as "The State of Ohio v. Cristinoher Gaspareno." (Docket No. 36, p. 1). We find that this is a simple clerical error and has no bearing on the case.

sic.) *Id.* at p. 6. Gaspareno indicated that he understood that he was to ask the court to clarify anything that seemed confusing. Gaspareno stated that he could not read or write English, could read and write some Spanish, but very little, although he indicated that he could understand spoken Spanish. Gaspareno told the court that he understood Coe's interpretations.

{¶15} Gaspareno indicated that he had time to talk with his attorney and that his attorney had advised him of his constitutional rights, the nature of the offense, and the consequences of pleading guilty. He also stated that he was satisfied with this advice.

{¶16} The court asked the State to present what the evidence would have shown had the case gone to trial. Specifically, the State said that "[Gaspareno] was aware that the Heroin was to be sold to the Confidential Informants that day but was not aware of the amount of the Heroin that was sold." *Id.* at p. 8. The court asked the State what was the specific allegations as to Gaspareno's participation, and the State responded, "That when they left the residence in Columbus, Ohio that [Gaspareno] knew that there would be Heroin sold to two confideni - - or excuse me, to two individuals in Waldo, Ohio. That he participated in the sale of that. That although he may not have arranged that - -[.]" *Id.* at p. 8-9. The State was briefly interrupted but continued.

Prosecutor: - - that he may not have arranged that sale by phone but that he knew the purpose of going to Marion, Ohio, or excuse me, Marion County, was for the sale of Heroin. That he was a part of that and my understanding for the confidential - - from the confidential informants is when these sales take place there is more than one individual that's always present. There's always another man along for the buy. That thee [sic] Defendant, Mr. Gaspareno, again, knew the heroin was to be sold and that he acted, I guess, as a - - a second, if you will, in the transaction.

Court: Sounds like the allegation is is [sic] that he's there providing additional security. Is that it?

Prosecutor: That would be correct.

Court: Okay. Any disagreement with those facts, Mr. Jones?

Jones: No, sir.

*Id.* at p. 9.

{¶17} The court asked Gaspareno if he understood that he was pleading to knowingly assisting another person in selling heroin, and Gaspareno replied that he understood. The court explained that his plea could result in a possible prison sentence of up to 12 months and a fine of up to $2,500, and Gaspareno stated that he understood. The court told Gaspareno that he could be placed on a term of post-release control for up to three years, and he said he understood. The court also explained the other possible penalties, and Gaspareno indicated he understood. The court told Gaspareno that he could have a trial instead of

-10-

pleading guilty and that the State would have to prove the case beyond a reasonable doubt, and he stated he understood. The court explained the rest of Gaspareno's constitutional rights, and he said he understood. Then, the following exchange occurred.

> Court: Do you also understand that upon a plea of guilty I could proceed immediately to sentencing and that sentencing is up to me?
>
> Coe: Yes.
>
> Court: Have any promises or threats been made to you to get you to plead guilty?
>
> Coe: No.

*Id.* at p. 13. Gaspareno stated that he was pleading guilty voluntarily and that he signed the Entry of Guilty Plea form after it was read to him and that he understood the contents of the form.

{¶18} Jones stated that he was satisfied with the conclusion that Gaspareno was entering the plea voluntarily, that Gaspareno fully understood his rights, the nature of the offense, and the consequences of pleading guilty. Jones said that he had the full opportunity to communicate with Gaspareno with the assistance of Coe, an interpreter.

{¶19} The court asked Gaspareno if he had any questions about what was covered at the hearing so far, and he stated that he had no questions.

{¶20} The court accepted Gaspareno's plea as being knowingly, voluntarily, and intelligently entered. Next, the court referred the matter to the Probation Department to conduct a PSI. Finally, Gaspareno did not declare an interest in any of the property subject to the forfeiture specifications.

{¶21} The Entry of Guilty Plea form was filed on February 11, 2015. By signing, Gaspareno acknowledged, among other things, that "[his] constitutional and statutory rights [were] explained to [him] by the Judge and by [his] attorney. [He had] reviewed the facts and law of [his] case with [his] attorney." (Docket No. 36, p. 1). Gaspareno's signature appears twice on the form as well as that of his counsel Jones.

{¶22} A sentencing hearing was held on March 5, 2015. Present in the courtroom were the judge, prosecutor, Gaspareno and his counsel, and Coe, serving as the interpreter. At the onset of the hearing, the court stated, "Also present is certified Court Interpreter, Mr. Pedro Coe." Mar. 5, 2015 Hrg., p. 1. Then, Coe was sworn in by the court. The court asked Gaspareno if he was "able to understand the proceedings with the assistance of the interpreter?" *Id.* The record is silent as to whether Gaspareno gave either an audible or visual response. The next portion of the transcript states, "**Thereupon, all questions directed to [Gaspareno] by the Court were translated to [Gaspareno] by Mr. Coe,**

**answered by [Gaspareno], and relayed back to the Court through Interpreter, Mr. Coe.**" (Emphasis sic.) *Id.*

{¶23} The State recommended that Gaspareno be placed on community control sanctions and that $414 of the $4,675 forfeiture specification be surrendered as a drug fine, noting that Gaspareno claimed no interest in the $4,261 remaining from the original total. The first forfeiture specification, involving the car, was dismissed. The State also moved to amend the property in the second forfeiture specification from $4,675 to $4,261.

{¶24} Jones argued that the court should impose the joint recommendation of the State and the defense and impose community control sanctions. He also stated that the money seized from Gaspareno should be applied to either a fine or court costs.

{¶25} The trial court stated that it had considered the purposes and principles of sentencing, the PSI, and the record. As to recidivism factors, the court noted that it was hard to tell how those factors weighed since no one was able to positively confirm Gaspareno's identity. Thus, it was impossible to tell if Gaspareno had a criminal record. The court stated that Gaspareno indicated that he had been deported twice and that this factored adversely as to recidivism. As to seriousness factors, the trial court found the crime to be very serious, noting that the amount of heroin sold was "Felony 2 levels of Heroin[.]" *Id.* at p. 5.

**{¶26}** The trial court also stated that it appeared the drug transaction was part of both organized criminal activity and criminal activity for hire. The court explained,

> [Gaspareno,] by his own statement, had made contact with the co-Defendant from - - you know, [Gaspareno] had received contact information while in Mexico, contacted [Guerra] then from Arizona, came to Columbus, was here for about eight days prior to thee [sic] transaction. Reasonable inference would be that [Gaspareno] was bringing the drugs up from Mexico. That also seems to cooberated [sic] by thee [sic] statements in the co-Defendants PSI which it, you know, appears that thee [sic] drugs were given from Defendant Gaspareno to Defendant Guerra and then sold by Defendant Guerra. I was gonna say then the sale then was to a Confidential Operative, as I understand it.

*Id.* at p. 5-6.

**{¶27}** Because the trial court found that Gaspareno's conduct equated to organized criminal activity, the court stated that it had the discretion to impose a prison term pursuant to R.C. 2929.13(B)(1)(b)(ix). Thereafter, the court sentenced Gaspareno to 12 months in prison with 102 days credited. It advised Gaspareno that he may be placed on post-release control for up to three years. The court forfeited Gaspareno's interest in the amount of $4,261 pertaining to the second forfeiture specification. Instead of a fine, the court ordered Gaspareno pay court costs and that the $414 taken off of Gaspareno's person was to be used to pay said costs.

{¶28} After the court was finished, Jones stated that Gaspareno objected to the prison term and asked for the appointment of appellate counsel. Jones was immediately appointed appellate counsel.

{¶29} A judgment entry of sentencing was filed on March 6, 2015. In the entry, it indicated that "[Gaspareno] appeared in Court with his attorney and a Court certified Spanish language interpreter, Pedro Koe [sic] for a sentencing hearing." (Docket No. 44, p. 1). The entry mirrored the sentence imposed at the hearing except in one aspect. The entry imposed a mandatory period of three years of post-release control, which was contrary to the discretionary language used at the hearing.

{¶30} Gaspareno filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED BY CONSIDERING EVIDENCE DE HORS THE RECORD; RESULTING IN THE IMPOSITION OF A SENTENCE THAT IS UNSUPPORTED BY THE RECORD AND CONTRARY TO LAW AND FURTHER RESULTING IN A VIOLATION OF THE APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ART. I, SEC. 16 OF THE OHIO CONSTITUTION AND RIGHT TO CONFRONT WITNESSES AGAINST HIM AS GUARANTEED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ART. I, SEC. 10 OF THE OHIO**

CONSTITUTION. (TR., FEB. 10, 2015, *PASSIM*; TR., MAR. 5, 2015, *PASSIM*). [EMPHASIS SIC.]

*Assignment of Error No. II*

THE APPELLANT'S PLEA WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY ENTERED PURSUANT TO CRIM. R. 11(C) AND *BOYKIN V. ALABAMA*, 395 U.S. 238, 242, 89 S.CT. 1709 (1969) BECAUSE THE TRIAL COURT FAILED TO INFORM THE APPELLANT THE IMPOSITION OF SENTENCE WAS AT THE DISCRETION OF THE TRIAL COURT REGARDLESS OF THE TERMS OF THE NEGOTIATED PLEA. (TR., FEB. 10, 2015, P. 9-15). [EMPHASIS SIC.]

*Assignment of Error No. III*

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN IMPOSING A MANDATORY THREE-YEAR PERIOD OF POST-RELEASE CONTROL. (TR., FEB. 10, 2015, P. 10; TR., MAR. 5, 2015, P. 6; JE OF SENTENCING, MAR. 5, 2015, P. 2).

*Assignment of Error No. IV*

THE TRIAL COURT'S FAILURE TO PROPERLY QUALIFY THE INTERPRETER VIOLATED THE APPELLANT'S RIGHT TO DUE PROCESS AND MEANINGFUL PARTICIPATION AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ART. I, SEC. 16 OF THE OHIO CONSTITUTION; TO BE INFORMED OF THE NATURE OF THE CHARGE AGAINST HIM AND ASSISTED BY COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ART. I, SEC. 10. OF THE OHIO CONSTITUTION; AND TO ENTER A VOLUNTARY, KNOWING, AND INTELLIGENT PLEA PURSUANT TO CRIM. R. 11(C) AND *BOYKIN V. ALABAMA*, 395 U.S. 238, 242, 89 S.CT. 1709 (1969). (TR., DEC. 29, 2014,

*PASSIM*; **TR., JAN. 27, 2015, *PASSIM*; TR., FEB. 10, 2015, *PASSIM*; TR., MAR. 5, 2015, *PASSIM*). [EMPHASIS SIC.]**

*Assignment of Error No. I*

**{¶31}** In his first assignment of error, Gaspareno argues that the trial court erred in sentencing him to a one year prison term based on hearsay statements contained in his co-defendants' pre-sentence investigations. We agree.

**{¶32}** "Trial courts have full discretion to impose any sentence within the statutory range." *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12–12–09, 2013–Ohio–1122, ¶ 20. "A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record or otherwise contrary to law." *State v. Barrera*, 3d Dist. Putnam No. 12–12–01, 2012–Ohio–3196, ¶ 20. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is in a better position to judge the defendant's chances of recidivism and determine the effects of the crime on the victim." *Noble* at ¶ 9, citing *State v. Watkins,* 3d Dist. Auglaize No. 2-04-08, 2004–Ohio–4809, ¶ 16.

{¶33} A person convicted of a felony of the fifth degree must be sentenced to a community control sanction of at least one year if the requirements of R.C. 2929.13(B)(1)(a) are met. R.C. 2929.13(B)(1)(a) provides,

> Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply:
>
> The offender previously has not been convicted of or pleaded guilty to a felony offense.
>
> The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.
>
> If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.
>
> The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.

{¶34} However, a trial court has the discretion to impose a prison term for a person convicted of a felony of the fifth degree if one of eleven factors is present. R.C. 2929.13(B)(1)(b). The relevant factor in this case is if "[t]he offender committed the offense for hire or as part of an organized criminal activity." R.C.

2929.13(B)(1)(b)(ix). The sentencing statute provides that a person convicted of a felony of the fifth degree can be sentenced to a prison term of six to twelve months. R.C. 2929.14(A)(5).

**{¶35}** It is well established that the rules of evidence do not apply to sentencing hearings. *See State v. Cook*, 83 Ohio St.3d 404, 425 (1998). "Courts have historically been permitted to consider hearsay evidence, evidence of an offender's criminal history, the facts concerning charges dismissed, and even offenses for which charges were not filed, but were addressed in the presentence investigation ("PSI")." *State v. Ropp*, 3d Dist. Union No. 14-13-21, 2014-Ohio-2462, ¶ 4, citing *State v. Bowsher*, 186 Ohio App.3d 162, 2010-Ohio-951 (2d Dist.).

**{¶36}** Crim.R. 32.2 requires that courts order a presentence investigation and report before imposing community control sanctions in a felony case. PSIs are additionally governed by R.C. 2951.03. It reads, in part,

> No person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court. If a court orders the preparation of a presentence investigation report pursuant to this section * * *, the officer making the report shall inquire into the circumstances of the offense and the criminal record, social history, and present condition of the defendant, all information available regarding any prior adjudications of the defendant as a delinquent child and regarding the dispositions made relative to those adjudications, and any other matters specified in Criminal Rule 32.2. * * *

R.C. 2951.03(A)(1).

**{¶37}** If a PSI is ordered, R.C. 2951.03 gives several rights to a defendant and his or her counsel. Specifically, defendant and/or defendant's counsel is entitled: (1) to read the report subject to a few restrictions; (2) to comment on the report and possibly introduce evidence that is relevant to any factual inaccuracies contained in the report; and (3) to comment upon an oral or written summary of the report performed by the court if the court determines that certain pieces of the report cannot be disclosed to the defendant or defendant's counsel. R.C. 2951.03(B)(1)-(3).

**{¶38}** PSIs and the contents of an oral or written summary of a PSI are considered confidential information. R.C. 2951.03(D)(1). Moreover,

> The court, an appellate court, authorized probation officers, investigators, and court personnel, the defendant, the defendant's counsel, the prosecutor who is handling the prosecution of the case against the defendant, and authorized personnel of an institution to which the defendant is committed may inspect, receive copies of, retain copies of, and use a presentence investigation report or a written or oral summary of a presentence investigation only for the purposes of or only as authorized by Criminal Rule 32.2 or this section, division (F)(1) of section 2953.08, section 2947.06, or another section of the Revised Code.

*Id.*

**{¶39}** Gaspareno was convicted of a felony of the fifth degree, which could result in a prison term of six to twelve months. Although Gaspareno's sentence

-20-

falls within the statutory guideline, Gaspareno was not convicted of a violent felony. Thus, Gaspareno should have been sentenced to a community control sanction if the requirements in R.C. 2929.13(B)(1)(a) were met. Yet, the trial court did not expressly consider this subsection, but rather found that it possessed the discretion to impose a prison sentence because Gaspareno committed the offense for hire or as part of an organized criminal activity, pursuant to R.C. 2929.13(B)(1)(b)(ix). In reaching its decision, the trial court stated,

> It's also indication [sic] that this is a part of both organized criminal activity and criminal activity for hire. Thee [sic] Defendant, by his own statement, had made contact with the co-Defendant from - - you know, he had received contact information while in Mexico, contacted the Defendant then from Arizona, came to Columbus, was here for about eight days prior to thee [sic] transaction. Reasonable inference would be that the Defendant was bringing the drugs up from Mexico. That also seems to [be] cooberated [sic] by thee [sic] statements in the co-Defendants [sic] PSI which it, you know, appears that thee [sic] drugs were given from Defendant Gaspareno to Defendant Guerra and then sold by Defendant Guerra. I was gonna say then the sale then was to a Confidential Operative, as I understand it.

Mar. 5, 2015 Hrg., p. 5-6. The court provided no other reasons justifying its decision.

{¶40} Gaspareno argues that the trial court erred by considering the statements made by the co-defendants in their separate PSIs. Specifically, he argues that without the hearsay statements there was no evidence to suggest that he participated in a crime for hire or in an organized criminal activity.

-21-

**{¶41}** It is clear that the statements contained in Guerra and Sanchez's PSIs are hearsay. Generally, hearsay is admissible in sentencing because the rules of evidence do not apply at a sentencing hearing. Further, hearsay statements contained in a defendant's PSI may be considered when imposing a sentence upon *that particular defendant*. *State v. Siefker*, 3d Dist. Putnam No. 12-10-14, 2011-Ohio-1867, ¶ 20. The question here, however, is whether a court can consider statements made in two co-defendants' PSIs (Guerra and Sanchez) for the purposes of imposing a sentence upon a third co-defendant (Gaspareno).

**{¶42}** The State approaches this question with the concept that essentially all hearsay is hearsay and that hearsay can be used for the purposes of sentencing. In support, the State cites *State v. Mescher*, 3d Dist. Shelby No. 17-86-17, 1987 WL 17252 (Sept. 16, 1987). In *Mescher*, the owner of a local bar was convicted of selling beer to a juvenile. *Id.* at \*1. At sentencing, the court based its decision on the fact that it had heard testimony in *other cases* involving juveniles drinking beer at the defendant's bar. *Id.* Ultimately, this court upheld the defendant's sentence after discussing the historical acceptance of hearsay statements being used at sentencing. Thus, the State urges us to follow *Mescher* and affirm.

**{¶43}** There is one key fact that distinguishes *Mescher* from this case. In this case, the contested hearsay appeared in two separate co-defendants' PSIs. As Gaspareno points out, the information contained in a PSI is only made available to

certain parties. Absent from this statutory list are co-defendants or their counsel. Thus, neither Gaspareno nor his counsel would have been able to read, examine, or otherwise see the PSIs filed in Guerra and Sanchez's cases. The information contained in those PSIs is confidential. Importantly, the information used by the court in *Mescher* was not confidential, but was of public record.

{¶44} Moreover, by considering the statements in the co-defendants' PSIs, the court has denied Gaspareno of the rights that he would have been entitled to if the PSI were his. R.C. 2951.03(B)(1) requires that a defendant and/or the defendant's counsel be given an opportunity to read the defendant's PSI so that they may have an opportunity to prepare a defense as to any factual inaccuracies in the report. Nowhere in the record does it indicate that Gaspareno or his counsel was given an opportunity to review the co-defendants' PSIs. More importantly, there could never be an opportunity for Gaspareno or his counsel to review the PSIs given their confidential nature. Thus, the court erred when it considered the statements made by co-defendants Guerra and Sanchez in their PSIs for the purposes of sentencing Gaspareno.

{¶45} Further, the error committed was not harmless because once the hearsay statements are removed from the equation, the only remaining evidence is the trial court's own speculation of what happened in the case. In his PSI, Gaspareno never claimed that he acted as a drug mule. The State never accused

Gaspareno as being the person responsible for supplying the heroin. Rather, the State's theory was that Gaspareno was serving as security. The indictment does not contain any language alleging that Gaspareno was a drug mule. All there is left is the court's speculation. Such speculation is insufficient to support a finding that Gaspareno engaged in a crime for hire or organized criminal activity.

{¶46} Accordingly, we sustain Gaspareno's first assignment of error.[5]

*Assignment of Error No. II*

{¶47} In his second assignment of error, Gaspareno argues that his guilty plea was not entered knowingly, voluntarily, or intelligently. Specifically, Gaspareno argues that the trial court was required to inform him that the trial court was not bound to follow the joint recommendation of the State and the defense regarding sentencing. We disagree.

{¶48} Crim.R. 11(C)(2) imposes several requirements a trial court must perform before accepting a defendant's guilty plea in a felony case. Specifically, the court must do the following:

---

[5] Although it is not clear from the record on appeal, it appears that Gaspareno has served his 12 month prison sentence. An order staying Gaspareno's sentence was never issued. He was sentenced in March 2015 and was given credit for 102 days served in jail. This means that Gaspareno would have been released sometime in late November or early December of 2015. If that is the case, the trial court would lack the authority to resentence Gaspareno. *See State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, ¶ 18 ("* * * when the entirety of a prison sanction has been served, the defendant's expectation in finality in his sentence becomes paramount, and his sentence for that crime may no longer be modified"); *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, ¶ 24. Since we cannot see, based on the record before us, that Gaspareno has indeed served his sentence in full, the trial court will need to determine whether it retains the authority to resentence Gaspareno.

(a)   Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b)   Informing the defendant and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c)   Informing defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilty beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a)-(c).

{¶49} "The rule is intended to ensure that guilty pleas are entered knowingly, intelligently, and voluntarily." *State v. Phillips*, 3d Dist. Van Wert No. 15-12-02, 2012-Ohio-5950, ¶ 24, citing *State v. Windle*, 4th Dist. Hocking No. 03CA16, 2004-Ohio-6827, ¶7.  " 'Criminal Rule 11(C)(2) clearly and distinctly mandates that the trial judge, before accepting a guilty plea in a felony case, inform the defendant of his rights as expressed in the rule and determine that he understands these rights and that he is making his guilty plea voluntarily.' "  *State v. Stewart*, 51 Ohio St.2d 86, 88 (1977), quoting *State v. Younger*, 46 Ohio App.2d 269 (8th Dist.1975), syllabus.  Failure to ensure that a plea is entered knowingly,

intelligently, and voluntarily renders its enforcement unconstitutional. *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).

{¶50} An appellate court's review of a Crim.R. 11(C)(2) colloquy is contingent on whether the defendant complains of either a failure to inform him of a constitutional right or a failure to inform him of a non-constitutional right. *State v. Thomas*, 3d Dist. Mercer No. 10-10-17, 2011-Ohio-4337, ¶ 20-21. If the appeal concerns constitutional rights, then we review the colloquy to ensure that the trial court *strictly complied* with Crim.R. 11(C)(2). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 18. On the other hand, if the appeal concerns non-constitutional rights, then we review the colloquy to ensure that the trial court *substantially complied* with Crim.R. 11(C)(2). *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶ 11-12. "Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implication of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "Furthermore, a defendant who challenges his guilty plea on the basis that the advisement for the nonconstitutional rights did not substantially comply with Crim.R. 11(C)(2)(a)(b) must also show a prejudicial effect, meaning the plea would not have been otherwise entered." *State v. Anderson*, 7th Dist. Mahoning No. 11MA125, 2012-Ohio-2759, ¶ 14, citing *Veney* at ¶ 15, citing *Nero* at 108; *see also Thomas* at ¶ 21. In this case, Gaspareno argues that the trial court failed to

sufficiently notify him that the trial court could depart from the joint sentencing recommendation and that it had the discretion to impose whatever sentence the court deemed necessary, subject to certain statutory limitations.

{¶51} Gaspareno's complaint fails to implicate any of the constitutional rights enumerated in Crim.R. 11(C)(2)(c). *See Veney* at ¶ 19. In *Veney*, the Supreme Court of Ohio found that Crim.R. 11(C) encompasses five constitutional rights: (1) the right to a jury trial; (2) the right to confront one's accusers; (3) the privilege against self-incrimination; (4) the right to use the compulsory process to obtain witnesses; and (5) the right to require the state to prove the defendant's guilt beyond a reasonable doubt. *Id.*, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed. 2d 274 (1969); *State v. Ballard*, 66 Ohio St.2d 473 (1981), paragraph one of the syllabus.

{¶52} Further, it appears that Gaspareno's complaint does not invoke a non-constitutional right. *See Anderson* at ¶ 14. In *Anderson*, the Seventh District Court of Appeals, in interpreting Crim.R. 11(C), stated that there are four non-constitutional rights that a defendant must be informed of: (1) the nature of the charges; (2) the maximum penalty involved, including an advisement on post-release control, if applicable; (3) whether the defendant is eligible for probation or community control sanctions; and (4) that after the defendant enters his plea of guilty or no contest, the trial court may proceed directly to sentencing. *Id.*, citing

Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10-13; *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 19-26.

**{¶53}** Since Gaspareno's complaint has not traditionally been considered a non-constitutional right, the question becomes should we recognize such a right here. This court has already addressed this particular question and found that a "trial court is under no obligation to inform the defendant that it will not follow the sentencing recommendation." *State v. Graham*, 3d Dist. Union No. 14-04-28, 2005-Ohio-1431, ¶ 11; *see also State v. Coats*, 3d Dist. Mercer Nos. 10-09-04, 10-09-05, 2009-Ohio-3534, ¶ 21. Thus, although it may be the preferred practice to inform the defendant that the trial court is not bound by the sentencing recommendation, such is not required. *Coats* at ¶ 21.

**{¶54}** Further, even if the trial court would have been required to warn Gaspareno that it was not bound by any sentencing recommendation, we find that the court still substantially complied with the requirements of Crim.R. 11. Specifically, the trial court advised Gaspareno of the possible maximum sentence, one year in prison and a fine of up to $2,500, for the crime to which he was pleading. Gaspareno indicated that he was aware of this sentence. Moreover, the court asked Gaspareno if he understood "that upon a plea of guilty I could proceed immediately to sentencing and that sentencing is up to me?" Feb. 10, 2015 Hrg., p. 13. Gaspareno replied, "Yes." *Id.* Finally, the trial court asked Gaspareno,

"Have any promises or threats been made to you to get you to plead guilty?" *Id.* Gaspareno replied, "No." *Id.* Such inquiries were sufficient to substantially comply with Crim.R. 11. *See State v. Crable*, 7th Dist. Belmont No. 04 BE 17, 2004-Ohio-6812, ¶14.

**{¶55}** This court has been consistent with its position to not read a requirement into a statute that is not present in the statutory language. *See State v. Blanton*, 3d Dist. Marion No. 9-15-07, 2015-Ohio-4620, ¶ 34; *State v. Faber*, 3d Dist. Seneca No. 13-15-01, 2015-Ohio-3720, ¶ 36. Although the Criminal Rules of Procedure are not statutes, the same interpretation rules apply. *State v. Athon*, 1st Dist. Hamilton Nos. C-110236, C-110237, C-110238, C-110239, C-110290, 2012-Ohio-765, ¶ 7, *reversed on other grounds*, 136 Ohio St.3d 43, 2013-Ohio-1956; *State v. Edgeworth*, 6th Dist. Lucas No. 7947, 1975 WL 182372, *5 (Nov. 14, 1975). "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation." *State v. Taylor*, 114 Ohio App.3d 416, 422 (2d Dist.1996).

**{¶56}** The language in Crim.R. 11(C) is clear and unambiguous; it does not require a trial court to inform the defendant that the trial court has the discretion to impose a sentence that is different than that recommended by a plea agreement as we have previously found in *Graham*. In this case, the trial court was not required to inform Gaspareno that the trial court had the discretion to sentence him to any

sentence other than that recommended by the State and defense. Additionally, the trial court complied with all the other requirements of Crim.R. 11. The trial court informed Gaspareno of all the constitutional rights he waived as a result of pleading guilty and of all the non-constitutional rights. Thus, Gaspareno's argument lacks merit.

{¶57} Accordingly, we overrule Gaspareno's second assignment of error.

*Assignment of Error No. III*

{¶58} In his third assignment of error, Gaspareno argues that the trial court erred by imposing a mandatory three year period of post-release control. We agree.

{¶59} The State concedes that the trial court so erred. We have reviewed the record and find that, while the trial court notified Gaspareno that he could be subjected to a period of post-release control of up to three years at the sentencing hearing, the entry sentencing Gaspareno mistakenly imposed a mandatory three year period of post-release control. Thus, we vacate Gaspareno's sentence, regarding post-release control, and remand the case to the trial court so that it may correct the sentencing entry. *See State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 14 ("Because appellant was notified of the proper term of postrelease control at his sentencing hearing and the error was merely clerical in

nature, [the judge] was authorized to correct the mistake by nunc pro tunc entry without holding a new sentencing hearing.").

**{¶60}** Accordingly, we sustain Gaspareno's third assignment of error.

*Assignment of Error No. IV*

**{¶61}** In his fourth assignment of error, Gaspareno argues that the trial court failed to properly qualify the interpreter, Coe. As a result, Gaspareno argues that he was never informed of the nature of the charge against him and that his plea was not entered voluntarily, knowingly, and intelligently. We disagree.

**{¶62}** Gaspareno failed to object to Coe's qualifications at any point during any of the proceedings. Accordingly, he has waived all but plain error. *State v. Bump*, 3d Dist. Logan No. 8-12-04, 2013-Ohio-1006, ¶ 81. To have plain error under Crim.R. 52(B), the error must be an "obvious" defect in the trial proceedings that affected the defendant's "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. Further, plain error only exists where "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431 (1997).

**{¶63}** Sup.R. 88 states that,

-31-

> A court shall appoint a foreign language interpreter in a case or court function in either of the following situations:
>
> (1)   A party * * * who is limited English proficient or non-English speaking request a foreign language interpreter and the court determines the services of the interpreter are necessary for the meaningful participation of the party * * *;
>
> (2)   Absent a request from a party * * * for a foreign language interpreter, the court concludes the party * * * is limited English proficient or non-English speaking and determines the services of the interpreter are necessary for the meaningful participation of the party * * *.[6]

Sup.R. 88 also provides a hierarchy for preferred interpreter candidates: (1) a Supreme Court of Ohio certified foreign language interpreter; (2) a provisionally qualified foreign language interpreter; (3) a language-skilled foreign language interpreter; and (4) telephonic interpreter. *See* Sup.R. 88(D)(1)-(4). Further, "To ensure the accuracy and quality of interpretation, a court shall appoint two or more foreign language interpreters * * * for a case or court function involving multiple parties, witnesses, or jurors requiring the services of an interpreter."[7]   Sup.R. 88(F)(2). Finally, "A court shall administer an oath or affirmation to a foreign language interpreter appointed pursuant to division (A) of this rule * * * in accordance with Evid.R. 604." Sup.R. 88(I).

---

[6] R.C. 2311.14(A)(1) provides for a similar requirement. It also requires the same oath to be given that is required under Sup.R. 88(I).

[7] Gaspareno does not argue that the failure to have separate interpreters for each co-defendant during each pre-trial constituted plain error, thus we will not consider that argument.

**{¶64}** In the case before us, the only instance of the court qualifying the interpreter is when the court first introduced Coe on the record. At the December 29, 2014 hearing, the trial court was stating who all was present and said, "Also present with the Defendants is *certified interpreter* Pedro Coe who has performed - - providing interpretation services for the Defendants today." Dec. 29, 2014 Hrg., p. 2. Had Gaspareno objected to Coe's qualifications, either he or the court would have had the opportunity to question Coe regarding his qualifications. Since Gaspareno failed to do so, no information exists in the record to show that Coe was unqualified to serve as an interpreter. Finally, Gaspareno has not presented evidence to suggest that any of Coe's interpretations were inaccurate. Thus, Gaspareno has failed to overcome his burden of showing an obvious error in the proceedings in this regard.

**{¶65}** Gaspareno also argues that plain error is present because Coe stopped interpreting during the first pre-trial. At the December 29, 2014 hearing, Coe was in the act of interpreting for the defendants when the following exchange occurred:

Lowther:  From what I've received I've not seen anything that would I guess - - okay - -

Coe:  They stated that that - -

Lowther:  No. No. No.

> Doyle: I don't want them saying anything. I don't want my client saying anything. Unless you run it by me.
>
> Court: Right. Right. If there's something they want to communicate to their attorney we can allow ya [sic] to communicate that to their attorney. I don't want you to communicate it out in open Court.
>
> Coe: Okay. No problem.

*Id.* at p. 15. For approximately one and a half pages of the pre-trial transcript, Coe was not interpreting for the defendants. The content of that portion surrounded the letter written by Guerra to Sanchez and who would be interpreting the letter. Gaspareno's counsel did indicate his opinion during this exchange regarding whether Coe should be the one to translate the letter. After the court was made aware that Coe was no longer interpreting, the court instructed Coe to not stop interpreting for any reason.

{¶66} Assuming that this was an obvious mistake, Gaspareno has failed to show how his substantial rights were affected. Most importantly, the concern raised by Gaspareno's attorney was addressed by the court and his attorney again, shortly after Coe was instructed to continue interpreting. Thus, any error was corrected.

{¶67} Finally, Gaspareno argues that his plea was not entered knowingly, intelligently, or voluntarily based on the ineffectiveness of the interpreter. As we stated in more detail supra, Gaspareno entered his plea knowingly, intelligently,

and voluntarily. Further, any argument that Coe's ineffectiveness caused Gaspareno to enter into a plea that was neither knowingly, intelligently, or voluntarily inherently involves the argument that the court failed to properly qualify Coe. Again, we found supra that Gaspareno failed to prove that Coe was not properly qualified by the court.

{¶68} Accordingly, we overrule Gaspareno's fourth assignment of error.

{¶69} Having found error prejudicial to Gaspareno, in some of the particulars assigned and argued, we affirm, in part, reverse, in part, the judgment of the trial court, and remand the matter for further proceedings consistent with this opinion.

*Judgment Affirmed, in Part,*
*Reversed, in Part, and*
*Cause Remanded*

**SHAW, P.J., concurs in Judgment Only.**
**WILLAMOWSKI, J., concurs.**

**/jlr**