[Cite as *State v. Morgan*, 2019-Ohio-2385.]

**Released:  June 13, 2019**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

STATE OF OHIO,                          :
                                     :
   Plaintiff-Appellee,        :          Case No.  18CA13
                                     :
   vs.                        :
                                     :          <u>DECISION AND JUDGMENT</u>
DANNY R. MORGAN, SR.,                    :          <u>ENTRY</u>
                                     :
   Defendant-Appellant.       :
_____

<u>APPEARANCES:</u>

Timothy Young, Ohio Public Defender, Patrick T. Clark, Assistant State
Public Defender, Columbus, Ohio, for Appellant.

James K. Stanley, Meigs County Prosecuting Attorney's office, Pomeroy,
Ohio, for Appellee.
_____

Smith, P. J.

{¶1} Danny R. Morgan, Sr., appeals the judgment entry of the Meigs County Common Pleas Court, entered March 28, 2018.  Morgan was convicted by a jury of one count of attempted murder and two counts of felonious assault.  On appeal, Morgan asserts the trial court erred by failing to grant his motion to dismiss based upon a violation of his statutory speedy trial rights.  He also asserts the court erred in imposing a maximum sentence.  Upon review, we find no merit to Morgan's arguments.  Accordingly, we

overrule Morgan's assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On May 2, 2016, the Meigs County Grand Jury returned a three-count indictment against Danny R. Morgan, Sr., (hereinafter "Appellant"). Count One was attempted murder, a violation of R.C. 2923.02(A)/2903.03(A); Count Two was felonious assault, a violation of R.C.2903.11(A)(1); and Count Three was felonious assault by means of a deadly weapon, a violation of R.C. 2903.11(A)(2). The indictment, Case No. 16CR048, stemmed from events which occurred on March 19, 2016.

{¶3} Appellant had been residing for several days with Danny Walker, a long-time acquaintance. On March 18, 2016, Appellant and Walker had spent part of the day drinking heavily at Walker's home. In the early morning hours of March 19th, Appellant made three 911 phone calls. First, Appellant called 911 stating that Walker had just admitted to him that he raped him a couple of months prior. The 911 dispatcher, Twila Childs, dismissed Appellant as a non-emergent, confused and intoxicated caller. Appellant was advised to "sleep it off" and call the next day if necessary.[1]

---

[1] Childs testified when Appellant first called to report the rape, she was initially confused about the nature of his call because of his slurred speech and because he had previously called several times on the evening of March 18th to report some type of dispute with his daughter.

{¶4} During a second call, Appellant again reported an alleged rape and stated, "I bet you'd come if I killed a guy." At that point, Childs immediately dispatched officers to the residence. Appellant called a third time stating, "the man's dead now…I killed him."

{¶5} Deputy Jeff Perry of the Meigs County Sheriff's Department testified that upon receiving the dispatch, he responded to the scene. Deputy Joshua Ridenour also responded. When the officers started to enter the residence, Appellant came outside covered in blood, saying "I think I killed him."

{¶6} Appellant was taken into custody and transported to the Meigs County Jail on March 19, 2016. On March 21, 2016, a criminal complaint charging felonious assault under R.C. 2903.11(A)(2) was filed. Appellant was arraigned and entered a not guilty plea in the Meigs County Court. Bond was set at $25,000, 10% cash permitted. Appellant was assigned a preliminary hearing date of March 24th.

{¶7} On March 24th, Appellant's charge was bound over to the grand jury. The Meigs County Clerk of Court's website shows that Appellant's

felonious assault charge was assigned Case No. 16CR046.[2]  The clerk's

website also shows that Appellant posted a surety bond on April 15, 2016.

{¶8} Appellant was subsequently indicted on the three aforementioned

counts on May 2, 2016.  The prosecutor requested an arrest warrant.

Testimony in the record indicates there were several unsuccessful attempts

to locate Appellant and serve the warrant.

{¶9} On September 22, 2016, the trial court ordered that Case Nos.

16CR046 and 16CR048 should be joined and all further pleadings filed

under Case No. 16CR048.  On November 1, 2016, the court noted that the

May 2, 2016 warrant had not been served.  The trial court continued the case

"off the docket" until "such time as the Sheriff serves the warrant and brings

the Defendant before the Court."

{¶10} Eventually Appellant was brought before the Meigs County

Common Pleas Court and arraigned on March 27, 2017.  The arraignment

entry contains an additional note: "Prior bond posted in county court by A-1

Surety.  Def. Counsel suggests bond still good [indecipherable] Ct will get

clarification."  On that date, Appellant's surety bond was continued.

---

We take judicial notice of the information contained on the Meigs County Court and the Meigs County Common Pleas Clerk of Court's websites.  *State v. Rutherford,* 4th Dist. Pike No. 17CA883, 2017-Ohio-2638, at Fn.4; *In re Elfrich*, 5th Dist. Licking No. 13CA20, 2014-Ohio-1933, at ¶35 (See, e.g., *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007–Ohio–4798, 974 N.E.2d 516, ¶8, 10 (court can take judicial notice of judicial opinions and public records accessible from the internet).

{¶11} On April 13, 2017, Appellant filed a motion to dismiss asserting that his right to constitutional speedy trial had been violated. The State filed a response asserting that any delay in bringing Appellant to trial was caused by Appellant's own actions in evading service of the indictment. On May 30, 2017, the trial court denied the motion.

{¶12} Appellant eventually proceeded to a jury trial commencing in March 2018. On March 28, 2018, the trial court's judgment entry was journalized. Appellant was convicted on all three counts. As to Count One, attempted murder, a felony of the first degree, Appellant was sentenced to a maximum prison term of 11 years. The court found that Counts Two and Three merged for purposes of sentencing.

{¶13} This timely appeal followed. Where pertinent, additional facts are set forth below.

## ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED BY FAIILNG TO GRANT DANNY MORGAN'S MOTION TO DISMISS HIS CASE FOR LACK OF A SPEEDY TRIAL UNDER R.C. 2945.71 AND R.C.2945.73."

"II. MR. MORGAN'S SENTENCE IS BOTH UNSUPPORTED BY COMPETENT, CREDIBLE EVIDENCE IN THE RECORD AND CONTRARY TO LAW."

## ASSIGNMENT OF ERROR ONE – SPEEDY TRIAL

## A.  STANDARD OF REVIEW ON MOTION TO DISMISS

{¶14} "Appellate review of a trial court's decision on a motion to dismiss for a violation of the speedy trial requirements presents a mixed question of law and fact." *State v. Brooks,* 2018-Ohio-2210, 114 N.E. 3d 220, at *¶*21, quoting, *State v. Spencer,* 2017-Ohio-456, 84 N.E.3d 106, ¶16 (4th Dist.); *State v. Baugh,* 5th Dist. Tuscarawas No. 2017AP030007, 2018-Ohio-857, ¶71.  "Thus, appellate courts will defer to a trial court's findings of fact as long as competent, credible evidence supports them." *Brooks, supra,* quoting, *Spencer* at ¶16, citing *State v. Brown*, 131 Ohio App.3d 387, 391, 722 N.E.2d 594 (4th Dist.1998).   "Appellate courts then independently determine whether the trial court properly applied the law to the facts." *Brooks, supra*; *Spencer* at ¶16.  And when reviewing the legal issues in a speedy trial claim, we must strictly construe the statutes against the state. *Brooks, supra.* See *Brecksville v. Cook,* 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996); *Spencer* at ¶16; *State v. Deacey,* 2d Dist. Montgomery No. 27408, 2017-Ohio-8102, at ¶75.

## B.  LEGAL ANALYSIS

{¶15} The Sixth Amendment to the United States Constitution (which is made applicable to the states through the Due Process Clause of the Fourteenth Amendment) and Article I, Section 10 of the

Ohio Constitution guarantee a criminal defendant the right to a speedy trial. This guarantee is implemented by R.C. 2945.71, which provides specific statutory time limits within which a person must be brought to trial. *Brooks, supra,* at ¶23; *State v. Blackburn,* 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶10. R.C. 2945.71(C)(2) "requires that a person against whom a felony charge is pending shall be brought to trial within 270 days after the person's arrest." *Brooks, supra,* quoting, *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶81. Appellant has limited his argument to an alleged deprivation of a statutory speedy trial, so we will address his arguments solely in light of the Ohio statute.

{¶16} Appellant asserts that it is undisputed that the facts giving rise to the indictment in Case No. 16CR48 are the same basis underlying the complaint in Case No. 16CR46. Appellant points out that when the indictment in this case was filed on May 2, 2016, Appellant was at liberty, having posted a bond in Case No. 16CR046. By April 13, 2017, when Appellant filed a speedy-trial motion in Case No. 16CR048, 437 speedy-trial days had elapsed from his initial arrest.

{¶17} Appellant concludes that the speedy-trial clock began running upon a complaint being filed in Meigs County Court under Case No. CRA113 (which later became 16CR46.) Furthermore, any delay that resulted from the search for Mr. Morgan after the issuance of an arrest warrant on Case No. 16CR048 was due to the government's error and through no fault of Appellant.

{¶18} In denying Appellant's speedy-trial motion, the trial court found that "[d]efendant's 270 days did not start to run until the Defendant was arrested and arraigned [on Case No. 16CR048] on March 27, 2017." The trial court also found that the issuance of an arrest warrant on May 2, 2016 and subsequent search for Mr. Morgan "excuse[d]any delay in bringing the case to trial." For the reasons which follow, we agree with the trial court's determinations.

{¶19} We observe that Appellant was initially arrested and jailed on March 19, 2016. When computing any period of time prescribed by an applicable statute, the date of the act or event from which the period begins to run is not included. *State v. Fisher,* 4th Dist. Ross No. 11CA3292, 2012-Ohio-6144, at ¶14; *State v. Alexander,* 4th Dist. No. 08CA3221, 2009–Ohio–1401, at ¶18, citing *State v. Saffin,* 4th Dist. No. 07CA2967, 2008–Ohio–338, ¶9; R.C.1.14; Crim R.45(A). Time is calculated to run the day

after the date of arrest. *State v. Miller,* 9th Dist. Nos. 10CA009922, 10CA009915, 2012–Ohio–1263, at ¶9, quoting *State v. Brownard,* 9th Dist. No. 06CA009053, 2007–Ohio–4342, at ¶12. Thus, we begin counting from March 20, 2016.

{¶20} The Meigs County Clerk of Court's website indicates Appellant posted surety bond on April 15, 2016. Appellant's motion to dismiss was filed on April 13, 2017. Appellant asserts that he should have been brought to trial by December 15, 2016, which is 270 days from March 20, 2016. By the time of the filing of the motion, 437 days had elapsed. Because the 270-day period was exceeded, Appellant presented a prima facie speedy trial violation. See *Brooks, supra,* at ¶24; *State v. Smith*, 4th Dist. Lawrence No. 16CA10, 2017-Ohio-7864, at ¶21, citing *State v. Squillace,* 10th Dist. Franklin No. 15AP-958, 2016-Ohio-1038, at ¶14. Once a defendant establishes a prima facie case for dismissal, the burden shifts to the state to prove that the time was sufficiently tolled to extend the period. *Brooks*, at ¶24; *Smith* at ¶21, citing *Squillace* and *State v. Anderson,* 4th Dist. Scioto No. 15CA3696, 2016-Ohio-7252, at ¶19.

{¶21} The State has directed us to R.C. 2945.72. "R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial." *Brooks,* at ¶25, quoting,

*Ramey* at ¶24. The State argues that in appellant's case, the pertinent tolling provisions in this case are R.C. 2945.72(E) ("Any period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused") because of Appellant's failure to provide a valid address. Additionally, the State has directed us to two cases, *State v. Stokes*, 2011-Ohio-2104, 952 N.E. 2d 1192 (12th Dist), and *State v McClaine,* 8th Dist. Cuyahoga No. 46969, 1983 WL 2911 (Dec. 15, 1983). The *Stokes* court held that a delay of over two years from the defendant's first appearance in court was occasioned by defendant's failure to furnish a proper address. *McClaine* held that a large part of the delay of trial in that case was occasioned by the defendant's neglect in providing an address where he could be located.

{¶22} However, Appellant's response to this argument is to direct us to Crim. R. 9. Appellant points out that at the time of the indictment, he was free on a posted surety bond in Case No. 16CR046, and that 16CR048 derives from the same underlying facts. As such, pursuant to Crim. R. 9, the prosecutor erred by issuing a warrant for his arrest when Appellant should have been summoned. Crim. R. 9(A) provides in pertinent part:

> "Upon the request of the prosecuting attorney, the clerk shall forthwith issue a warrant for each defendant named in the indictment***. The clerk shall issue a summons instead of a warrant where the defendant has been released pursuant to Rule

46 and is indicted for the same offense for which he was bound over pursuant to Rule 5."

{¶23} We begin by acknowledging that whether or not Appellant should have been considered free on bond the entire time is a somewhat hazy issue. As set forth in the facts above, the common pleas court arraignment entry indicates that by Appellant's March 27, 2017 arraignment on Case No.16CR048, whether or not Appellant's bond was still in effect was not clear. The arraignment hearing transcript demonstrates that the court requested clarification in writing, but the record does not reflect that this occurred. It appears the court continued the bond based on defense counsel's representations.[3] However, a review of the Meigs County Clerk of Court's website reveals a notation as in Case No. 16CR048 as follows:" 3/27/17 JOURNAL ENTRY ARRAIGNMENT ENTRY Released on surity [sic] bond posted from county court." Below this entry is a similar notation on the same date: "RECOGNIZANCE OF ACCUSED-$25,000 SURETY BOND POSTED AT AND TRANSFERRED BY COUNTY COURT IN CASE #16-CR-06, NOW COMBINED WITH THIS CASE." Given that a trial court speaks through its journal entries, we conclude Appellant's bond was in effect the entire time. See *State v. Neal*, 4th Dist. 2015-Ohio-5452, at

---

[3] Later, when the court ruled on Appellant's motion to dismiss, the trial court's entry stated: "It is felt that the bond is void or voidable" and "the bond was continued mistakenly(?)[sic]."

Fn.2, citing *State v. Brooke*, 113 Ohio St. 3d 199, 2007-Ohio-1533, 863 N.E.

2d 1024, at ¶47.

{¶24} Nevertheless, there is no doubt that on May 2, 2016, when

Appellant was indicted and when the prosecutor requested a warrant for his

arrest, his bond was in effect.  Appellant urges that under these

circumstances, the clerk "shall issue a summons instead of a warrant where

the defendant has been released…."  We agree.  The plain language of the

criminal rule provides for issuance of summons in those situations.

Although the Criminal Rules of Procedure are not statutes, the same

interpretation rules apply.  *State v. Gaspareno*, 2016-Ohio-990, 61 N.E. 3d

550 (3rd Dist.), at ¶55; *State v. Athon,* 1st Dist. Hamilton Nos. C–110236,

C–110237, C–110238, C–110239, C–110290, 2012-Ohio-765, at ¶7,

(reversed on other grounds, 136 Ohio St.3d 43, 2013-Ohio-1956, 989 N.E.2d

1006); *State v. Edgeworth,* 6th Dist. Lucas No. 7947, 1975 WL 182372, *5

(Nov. 14, 1975).  "Where the language of a statute is plain and unambiguous

and conveys a clear and definite meaning, there is no need to apply rules of

statutory interpretation."  *State v. Taylor*, 114 Ohio App.3d 416, 422, 683

N.E.2d 367 (2d Dist.1996).

{¶25} However, the language of the rule further, clearly states that the

clerk shall issue a summons where the defendant has been released and "is

indicted for the same offense for which he was bound over." While the indictment arises from the same underlying facts, Appellant was indicted on a separate offense, attempted murder. Appellant was bound over on R.C. 2903.11, felonious assault, and Counts Two and Three of the indictment are for felonious assault. Although arising from the same set of circumstances, attempted murder and felonious assault are separate offenses. Therefore, while arguably the prosecutor may have erred with regard to requesting a warrant instead of a summons on Counts Two and Three, we find it to be harmless.

{¶26} In *Markel v. Markel,* 5th Dist. Ashland No. -4-COA-015, 2004-Ohio-3437, an appeal involving child custody issues, the appellate court noted that R.C. 2705.031 mandated the issuance of a summons to Appellant before a hearing on a motion for contempt. However, the court concluded that based upon the record, there was no indication of prejudice, and therefore the failure to issue a summons was harmless error. *Id.* At ¶10. While *Markel* involved a civil proceeding, its reasoning is equally applicable. Appellant was indicted for a separate count, attempted murder, and a warrant for his arrest was properly issued pursuant to Crim.R.9. In this case, there is no indication prejudice occurred as a result of the issuance of the arrest warrant on all three counts.

{¶27} We turn now to the issue of whether or not reasonable efforts were made to locate Appellant.  The record reflects that at the hearing on Appellant's motion to dismiss for violation of his speedy trial right, the State called Major Scott Trussell of the Meigs County Sheriff's Department to testify as to the efforts made to locate Appellant.  Major Trussell testified one of his regular job duties is to coordinate actions by deputies, including serving warrants.  He testified as to the procedure for handling indictments and accompanying warrants which came to the sheriff's office.

{¶28} In particular, Major Trussell testified about the efforts to locate Appellant and to serve the arrest warrant.  The record reflects that Appellant supplied a "Buddy Road, Albany, Ohio" address on his bond document in Case No. 16CR046.  He was eventually arrested at a location on White's Hill Road in Meigs County.

{¶29} Major Trussell explained that upon receipt of the warrant, Appellant's information was entered into the National Crime Information Center (NCIC), which occurred on or about May 6, 2016.  Major Trussell testified that later, in July or August 2016, he saw Appellant's son, Danny Morgan, Jr., in the courthouse.  Major Trussell advised Appellant's son that his father had warrants for his arrest and he should turn himself in.

{¶30} Major Trussell also received a call in August 2016 that Appellant had been identified at the "124 Mart." Within 6 minutes of receiving this information, deputies responded to that location. However, Appellant had left the area.

{¶31} As a result of entering Appellant's information into the NCIC database, the sheriff's department also received a letter from the Social Security Administration advising that they had an address for Appellant on Zion Road in Athens County. On or about November 1, 2016, Major Trussell made contact with authorities in Athens County in order to arrest Appellant. Major Trussell was later advised that officers sent to that address "were told that Appellant did not reside at that address."

{¶32} Perhaps the strongest evidence that Appellant's own actions necessitated the delay in these proceedings was Trussell's testimony that according to the sheriff's department radio log, as early as May 6, 2016, 4 days after Appellant was indicted, Appellant called the sheriff's office to inquire about the charges. Trussell testified:

> Mr. Morgan called in uh to tell the dispatcher that he, the information that he received is not uh on his charges, was different, uh than what he was initially charged with. I guess, by reading it, you can say he was complaining that it wasn't accurate.

This testimony demonstrates that Appellant was well aware of the indictment and the additional counts, which included attempted murder. Thereafter, Appellant made no efforts to surrender to authorities. Appellant was not in fact located until March 2017.

{¶33} Based on this record, we find competent credible evidence supports the trial court's finding that speedy trial time was extended and necessitated by Appellant's efforts to evade arrest. As such, we find no merit to Appellant's argument that his statutory speedy trial rights were violated. Accordingly, the first assignment of error is hereby overruled.

## ASSIGNMENT OF ERROR TWO - MAXIMUM SENTENCE

### A. STANDARD OF REVIEW

{¶34} Appellant was sentenced to eleven (11) years, the maximum allowable sentence for Count One, attempted murder. In the second assignment of error, Appellant argues his sentence is both unsupported by competent, credible evidence in the record, and is contrary to law. Appellate courts review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Shankland,* 4th Dist. Washington No. 2019-Ohio-404, at ¶18; *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶1. Under R.C. 2953.08(G)(2) an "appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and

convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* A sentencing court must consider the purposes and principles of sentencing in accordance with R.C. 2929.11; the seriousness and recidivism factors set forth in R.C. 2929.12; and the appropriate consecutive sentence requirements enumerated in R.C. 2929.14(C)(4).[4]

{¶35} Although R.C. 2953.08(G)(2)(a) does not mention R.C. 2929.11 and 2929.12, the Supreme Court of Ohio has determined that the same standard of review applies to those statutes. *State v. Yost,* 4th Dist. Meigs No. 17CA10, 2018-Ohio-2719, at ¶11*; Marcum* at ¶23 (although "some sentences do not require the findings that R.C. 2953.08(G)[2][a] specifically addresses[,] * * * it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court"); *State v. Butcher,* 4th Dist. Athens No. 15CA33, 2017-Ohio-1544, ¶ 84. Consequently, "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23; *Butcher* at ¶ 84.

---

[4] In this case, the consecutive sentence requirements are not at issue.

{¶36} R.C. 2929.11 provides:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

(C) A court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender.

{¶37} R.C. 2929.12 sets forth factors to consider in determining the appropriate sentence. The statute contains a nonexclusive list of factors that render an offender's conduct more serious than conduct normally constituting the offense and factors that render an offender's conduct less serious than conduct normally constituting the offense. R.C. 2929.12(B)(C). Likewise, the statute sets forth a nonexclusive list of factors indicating the

offender is more likely to commit future crimes and factors indicating recidivism is less likely. R.C. 2929.12(D)(E).

{¶38} "Once the trial court considers R.C. 2929.11 and 2929.12, the burden is on the defendant to demonstrate by clear and convincing evidence that the record does not support his sentence." *Yost, supra*, at ¶ 12, quoting, *State v. Akins-Daniels,* 8th Dist. Cuyahoga No. 103817, 2016-Ohio-7048, ¶ 9; *State v. O'Neill*, 3d Dist. Allen No. 1-09-27, 2009-Ohio-6156, fn. 1.

{¶39} "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Yost, supra,* at ¶ 13, quoting, S*tate ex rel. Husted v. Brunner,* 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

B. LEGAL ANALYSIS

{¶40} In this case, both the sentencing transcript and sentencing entry reflect that the trial court considered the statements of counsel, the record, the trial testimony, and other relevant information. The trial court considered the overriding purposes of felony sentencing pursuant to R.C.

2929.11, and also considered all relevant seriousness and recidivism factors of R.C. 2929.12. The court sentenced Appellant to eleven years in prison, commenting "[G]iven what I heard at the uh trial, I think that's appropriate." While Appellant's eleven-year term does constitute a maximum sentence for attempted murder, it is also within the statutory range for the offense. Therefore, we initially conclude that Appellant's sentence is not contrary to law.

{¶41} Appellant also argues that his sentence is not clearly and convincingly supported by the record, given his history of trauma, "executive functioning deficits," and reaction to the mix of provocation and confusion on the night his crime occurred. In Appellant's view, the Court focused on the seriousness factors and failed to recognize factors such as: (1) appellant acted under strong provocation; (2) substantial facts, though not defenses, mitigated his conduct; (3) he had previously lived a law-abiding life for many years; and, (4) the circumstances leading to the crime were not likely to reoccur. Appellant also emphasizes that the trial court did not obtain a pre-sentence investigation report in order to have a more comprehensive overview prior to sentencing. Appellant argues the record shows that he acted under strong provocation, believing at the time of the crime that Walker had raped him.

{¶42} In support of his argument, Appellant directs us to the testimony of his expert witness Dr. Gregory Janson.[5] Dr. Janson testified that he had reviewed Appellant's medical records. He observed that Appellant had been treated at Grant Hospital for a concussion, an injury in which he had actually lost consciousness, just days before the incident with Danny Walker. He noted Appellant had various chronic medical conditions such as heart issues, alcohol abuse, and diabetes. Appellant had also survived several traumatic events during his lifetime, beginning with experiencing the Buffalo Creek Disaster in West Virginia[6] as a young child; losing his own infant child to Sudden Infant Death Syndrome; the incident in which he incurred the concussion; and, the recent alleged sexual assault.

{¶43} Dr. Janson opined that Appellant was a highly vulnerable person, with markers and symptomatology for post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI). Dr. Janson testified that commonly, persons with those symptoms may have an inability to correctly interpret feedback from the environment. As a result, those affected may

---

[5] Dr.Janson, a forensic examiner, holds a doctorate in clinical counseling and is a nationally certified counselor.

[6] The Buffalo Creek Disaster was one of the deadliest floods in U.S. history, occurring in southern West Virginia's Buffalo Creek Hollow. Negligent strip mining and heavy rain produced a raging flood and in a matter of minutes, 118 were dead and over 4,000 people were left homeless. Seven persons were never found. See West Virginia Department of Arts, Culture and History, "Buffalo Creek" at www.wvculture.org/history/bufffcreek/bctitle.html, accessed March 27, 2019.

react to stress or provocation by either reliving the previous traumatic event, or by experiencing a "fight or flight" reaction.

{¶44} However, on cross-examination, Dr. Janson noted that Appellant attempted to minimize his alcohol abuse. Dr. Janson opined that taking in an extreme amount of alcohol could have affected Appellant's reaction, lowering his ability to control impulses. Importantly, although Dr. Janson acknowledged that Appellant reported symptoms of PTSD, he could not say for sure that Appellant would have been diagnosed with PTSD at the time of his crime.

{¶45} Appellant also emphasizes that he does not present a high risk of recidivism. He argues the record does not show him to be anything other than a non-violent, easy-going person. The circumstances of March 19th, learning that he had been raped by Walker, are unlikely to occur again. There is no indication that he had behaved violently towards others in the past.

{¶46} We find no merit to Appellant's arguments. We have reviewed the entire record, including the trial transcript. Several times in the sentencing entry, the court comments on the seriousness of the crime. The record bears this depiction.

{¶47} Danny Walker, the victim of the stabbing, testified Appellant and he had spent the day together doing various errands around the county. Around 6:00 p.m., in Walker's home, they began drinking whiskey. The argument between them, about money and alcohol, began around 10:00 p.m. Appellant wanted to collect money Walker owed him. He also wanted Walker to drive him to get more alcohol. In his testimony, Walker denied raping Appellant or ever even discussing an alleged rape.

{¶48} According to Walker, when he refused Appellant's requests, Appellant first threatened to stab Walker's German Shepherd puppy. Walker went to pick up the puppy and take him to another room. When he leaned over, Appellant stabbed him. Walker had no memory of anything else until seven or eight days later.

{¶49} Walker was transferred to the Ohio State University Medical Center via helicopter. Reading from his medical records, Walker testified he had three stab wounds to his neck, injuring his voice box. He was intubated. For a time, his neck was swollen and he could not talk. Walker eventually had 5 surgeries in order to save his voice box. Prior to the stabbing, he was able to speak loudly. Now his voice "comes and goes." Walker acknowledged visible scars on his neck.

{¶50} Deputy Jeff Perry of the Meigs County Sheriff's Department testified when he arrived at the scene and first observed Appellant, he was "covered pretty much from head to toe in blood.    * * *it was all over him, his hair, his neck, his shirt." The testimony of both Walker and Deputy Perry support the seriousness of this crime.

{¶51} The trial court, as did the jury in convicting Appellant, apparently chose to discredit the "strong provocation" theory. Both the trial court and the jury apparently did not give credence to Dr. Janson's testimony about the substantial facts, not defenses, which were to be interpreted as mitigating Appellant's conduct. It is likely that the trial court found Appellant's criminal behavior as linked to his alcohol use and therefore, likely to recur. The prosecutor noted at sentencing that the continued pursuit of the "strong provocation" theory belied any genuine remorse. We are required to afford deference to the trial court's broad discretion in making sentencing decisions; trial courts have great latitude and discretion in formulating the appropriate sentence. *State v. Rahab,* 150 Ohio St.3d 152, 2017–Ohio–1401, 80 N.E.3d 431, ¶ 10. Here, we decline to second-guess the trial court's sentencing decision.

{¶52} Precedent refutes any contention that each statutory or other relevant factor is entitled to equal or a certain weight in the balancing

process. *Yost, supra,* at 19; See *State v. Graham,* 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, ¶ 25, rejecting the argument that because each of the statutory sentencing factors are mandatory, each is entitled to equal weight on balance, citing *State v. Bailey,* 4th Dist. Highland No. 11CA7, 2011-Ohio-6526, ¶ 34, quoting *State v. Arnett,* 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000) ("in considering the factors set forth in R.C. 2929.12, the trial court has 'the discretion to determine the weight to assign a particular statutory factor"). Furthermore, " 'Simply because the court did not balance the factors in the manner appellant desires does not mean that the court failed to consider them, or that clear and convincing evidence shows that the court's findings are not supported by the record.' " *Yost, supra,* at ¶ 20, quoting, *State v. Graham*, 4th Dist. Meigs No. 17CA10, 2018-Ohio-1277, at ¶ 26, quoting *State v. Butcher*, 4th Dist. Athens Nos. 15CA33, 15CA34, 2017-Ohio-1544, at ¶ 87. Given all the above and the standard of review, we cannot conclude that Appellant's sentence is clearly and convincingly unsupported by the record. Therefore, we also find no merit to Appellant's second assignment of error. As such, it is hereby overruled.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Abele, J.: Concur in Judgment and Opinion

For the Court,

BY: _____

Jason P. Smith, Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**